IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| LISA A. GILLIAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:06-CV-111 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claims for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth herein, defendant's motion for summary judgment [doc. 13] will be denied, and plaintiff's motion for summary judgment [doc. 11] will be granted to the extent it seeks remand pursuant to sentence four of § 405(g).[1]

I.

*Procedural History*

Plaintiff applied for SSI in July 2003, claiming to be disabled as of March 16, 1996, by constant back pain and by numbness in her left foot and left leg. [Tr. 1, 75, 84].

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The administrative record indicates that this is plaintiff's fourth application for SSI benefits, with alleged disability onset dates ranging between 1991 and 1996. [Tr. 11].[2]

The present claim was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place on June 3 and October 27, 2005, before the same ALJ who adjudicated her third application.

On December 6, 2005, the ALJ issued a decision denying benefits. He determined plaintiff has unspecified "severe" mental and musculoskeletal impairments which do not, singularly or in concert, equal any of the Commissioner's listed impairments. [Tr. 13, 16]. Plaintiff was found capable of performing a range of unskilled light work existing in the regional and national economies, and was thus ruled ineligible for SSI benefits. [Tr. 15-17].

Plaintiff then sought Appeals Council review. On May 2, 2006, review was denied, notwithstanding plaintiff's submission of three pages of additional medical records. [Tr. 4, 7].[3] The ALJ's ruling therefore became the Commissioner's final decision. *See* 20

---

[2] Plaintiff's first application (1996) was denied initially and not further pursued. [Tr. 11]. Her second application (1996) eventually resulted in an award of benefits. [Tr. 11]. Those benefits were discontinued in June 2002, apparently due to plaintiff's failure to respond to the Commissioner's review requests. [Tr. 11, 203]. Plaintiff's third application (2002) was denied by an Administrative Law Judge ("ALJ") on July 7, 2003, and then by the Commissioner's Appeals Council without further appeal. [Tr. 11-12, 30-39, 44]. Plaintiff does not now contest the ALJ's conclusion in this case that, "[t]herefore, res judicata applies to the period on and before July 7, 2003, and that period of time will not be reconsidered except to the extent necessary to show the history of the claimant's medical condition and/or credibility." [Tr. 12].

[3] Plaintiff's additional documents are discussed in her brief and are included in the administrative record. [Tr. 344-46]. This court can remand a case for further administrative
(continued...)

C.F.R. § 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

## II.

*Background and Testimony*

Plaintiff was born in 1963 and has only a ninth or tenth grade education because she became "tired of going to school." [Tr. 71, 79, 230]. Her longest-lasting reported employment was in 2000 as a wood bander in a factory. [Tr. 75-76]. Plaintiff has informed the Commissioner that this job was: (a) of three *months* duration, ending when she "had to quit due to low back pain." [Tr. 84, 230]; (b) of only three *weeks* duration, ending "because it was a temporary job. She had no problems on the job" [Tr. 204]; and (c) of only three weeks duration, ending "[b]ecause of the pain in my back. I couldn't perform my duties." [Tr. 351].

Plaintiff is five feet three inches tall and weighs approximately 225 pounds. [Tr. 102]. She claims that constant back pain renders her unable to cook, drive, shop, or do

---

³(...continued)
proceedings where a claimant shows that late-submitted evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). Plaintiff, however, has made no effort to articulate how her evidence warrants sentence six remand, nor has she even cited sentence six. The issue is accordingly waived, and plaintiff's additional medical evidence will *not* be considered by this court. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has not only failed to make a showing of good cause, but also has failed to even cite this relevant section or argue a remand is appropriate.").

housework. [Tr. 103-04, 110, 353-54, 357].[4] She also reports difficulties with memory and sleeping. [Tr. 102]. Plaintiff states that she can "sometimes" feed her cats, make a sandwich, and sew. [Tr. 103-04]. She has stated that: (a) she no longer attends church because of back pain (September 2003) [Tr. 105]; and (b) she no longer attends church "because it is boring" (November 2002). [Tr. 205].

III.

*Relevant Medical Evidence and Opinions*

A. <u>Physical</u>

A November 2001 nerve conduction study indicated "[a]bnormal EMG/nerve conduction study consistent with a subacute left lumbar radiculopathy involving the S1 nerve root." [Tr. 202]. A January 2002 MRI of the lumbar spine showed mild narrowing at L4-L5 and L5-S1, and slight/mild bulging at L2-L3 and L4-L5. [Tr. 199]. No other abnormalities were noted, and a May 2002 lumbar MRI was "stable from the [earlier January] examination." [Tr. 199, 200].

In August 2002, plaintiff sought treatment for "constant[,] aching" lower back pain secondary to a fall in the shower. [Tr. 177]. According to a contemporaneous lumbar radiology report,

---

[4] Other evidence indicates that plaintiff is less restricted than she alleges. [Tr. 115-17, 185, 216, 231].

> The bone densities are within normal [sic] and no compression deformities seen. There are Schmorl's nodes at the vertebral bodies of L1 and L2 which are of no clinical significance and also a limbus vertebra with a nonfused secondary epiphysis of the superior anterior segment of L3 which is also of no clinical significance. There is no abnormal narrowing of the disc spaces and no significant reactive sclerosis or subluxations. The pedicles, transverse processes, sacroiliac joints and posterior elements are intact.

[Tr. 179]. February 2003 lumbar imaging indicated "no . . . appreciable change from the [August 2002] study." [Tr. 213-14].

Plaintiff has been treated by nurse practitioner Jane Williams since November 2002 at a business called "Country Doc." FNP Williams has noted limited range of motion in the lumbar spine [Tr. 185-86, 191, 193] along with tenderness across the lower back. [Tr. 186-87, 190, 192-93]. On July 9, 2003, plaintiff complained that her back was "a little sore" *following a two-day camping trip*. [Tr. 185].

Plaintiff is prescribed an anti-depressant, a muscle relaxant, and a narcotic pain medication. [Tr. 184-95, 285, 287-97, 299-305, 309, 322-29]. Although she has been receiving monthly prescriptions for these medications for quite some time, plaintiff testified that they do not help her. [Tr. 360].

Dr. David McConnell performed a consultative physical examination in November 2003. Dr. McConnell observed that plaintiff is obese, "[o]verweight [by] 91 pounds." [Tr. 234-35]. Plaintiff was noted to ambulate independently and without a limp. [Tr. 235]. She was "well orientated to time, place and person[.]" [Tr. 235]. Plaintiff exhibited limited range of motion in the lumbosacral spine. [Tr. 236]. Based on his

5

examination, Dr. McConnell concluded that plaintiff's complaints of back and knee pain were supported by medical findings "and exogenous obesity +91 pounds." [Tr. 236]. Nonetheless, he opined that plaintiff was sufficiently capable of lifting, carrying, standing, walking, and sitting during an eight-hour workday. [Tr. 236].

In February 2004, plaintiff was referred to Dr. Ghaith Mitri for evaluation of her complaints of knee pain. An MRI of the left knee showed mild arthritis. [Tr. 271-72]. "Increased red marrow signal" was also noted, which "can be seen in obese patients as well as habitual smokers." [Tr. 272].[5] MRIs also showed some arthritis in the right knee. [Tr. 270]. Dr. Mitri wanted to conduct further evaluation and imaging regarding plaintiff's complaints of chronic back pain, but plaintiff "refused." [Tr. 268].

In April 2005, FNP Williams completed a medical assessment. She predicted minimal abilities of lifting and carrying secondary to degenerative disc and joint disease. [Tr. 320]. Nurse Williams opined that plaintiff could stand/walk up to three hours per workday and sit up to eight hours per workday if allowed to periodically change positions. [Tr. 320]. Nurse Williams further opined that plaintiff could "never" climb, stoop, kneel, balance, crouch, or crawl due to degenerative disc and joint disease. [Tr. 321].

---

[5] In February 2003, plaintiff told physical therapist Wissert that she smokes. [Tr. 216]. In November 2003, she told two different consulting examiners that she does *not* smoke. [Tr. 230-31, 234]. In July 2004, "Country Doc" noted that plaintiff was "on nicot[ine] patches to stop smoking." [Tr. 295].

6

B. Mental

Alice Garland, M.S. performed a consultative mental examination in November 2002. Ms. Garland also evaluated plaintiff in 1996. After comparing the 2002 interview with her notes from 1996, Ms. Garland generated a report that specifies approximately ten instances of suspected misstatements and/or malingering. [Tr. 203-07]. Ms. Garland concluded that

> [s]he may be limited in the ability to do detailed and complex work. Ability to persist and concentrate was limited today in regards to concentration and recent memory, ***but the examiner is concerned that she did not put forth her best effort.*** . . . Ability to adapt is difficult to determine, but may not be as limited as the claimant alleged on the day of this evaluation.

[Tr. 207] (emphasis added).

Clinical psychologist Roy Nevils performed a consultative mental examination in November 2003. There is no indication that Dr. Nevils had access to Ms. Garland's prior report concerning plaintiff's credibility. In Dr. Nevils's view,

> Ms. Gilliam presented herself for evaluation with adequate attention having been given to appearance and personal hygiene. No obvious physical impairment or discomfort was noted. She was overtly calm and pleasant in manner. She was cooperative, spontaneous, coherent, and without evidence of thought disorder.

[Tr. 229]. Plaintiff exhibited some problems with memory and orientation. [Tr. 229]. Based on a "provisional" diagnosis of borderline intellectual functioning, Dr. Nevils concluded that "she _could have_ at least moderate problems with memory and concentration." [Tr. 232] (emphasis added).

After reviewing Dr. Nevils's report, state agency reviewing physician William Regan completed a Mental Residual Functional Capacity Assessment. Dr. Regan predicted "moderately" restricted concentration and "markedly" restricted ability to remember detailed instructions. [Tr. 253]. However, FNP Williams, in response to the Commissioner's inquiry "Does your patient have an underlying mental disorder which significantly interferes with functioning?", answered "No." [Tr. 182].

IV.

*Expert Testimony*

Dr. Robert Spangler ("Dr. Spangler" or "VE") testified at plaintiff's administrative hearings. The ALJ presented Dr. Spangler with a hypothetical claimant of plaintiff's age, education, and work experience. The hypothetical claimant was restricted to light work activity, with the additional restriction of no more than "simple, unskilled jobs that would not require her [to] directly interact with the general public." [Tr. 361].

In response, the VE cited examples of jobs that the hypothetical claimant could perform. [Tr. 362]. Based on a further question from the ALJ expressly pertaining to Dr. Nevils's consultative report, the VE testified that no jobs would be available if the worker was additionally at least moderately limited in concentration and memory. [Tr. 3, 362]. Lastly, if the assessment of FNP Williams were fully credited, no jobs would be available due to the "many postural restrictions." [Tr. 362-63].

8

V.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

VI.

*Analysis*

Plaintiff argues that the ALJ inadequately justified his rejection of Dr. Nevils's opinion. The court agrees.

At plaintiff's second administrative hearing, the ALJ directly referenced Dr. Nevils's evaluation and the "moderately limited" memory/concentration predicted therein. [Tr. 3, 362]. In response, the VE testified that no employment would be available if the restrictions were credited.

In his decision, the ALJ addressed neither the issues of memory and concentration nor the VE testimony on those points. The only psychological limitation adopted was an inability to work with the public. The reasons provided for this conclusion were: (1) plaintiff's minimal history of mental health treatment; (2) "the fact that the claimant takes <u>no medication</u> whatsoever for mental-health considerations"; and (3) the paper assessments completed by Dr. Regan after Dr. Nevils's evaluation. [Tr. 3, 14] (emphasis in original). These reasons are insufficient.

The Sixth Circuit Court of Appeals has long made clear that "[i]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989); *Burton v. Apfel*, No. 98-4198, 2000 WL 125853, at *4 (6th Cir. Jan. 24, 2000) ("reiterating" *Blankenship*). As for Dr. Regan, that reviewing physician predicted even

11

greater problems with memory and concentration than did Dr. Nevils, so his assessment cannot be a basis for disregarding Dr. Nevils's opinion.

To be certain, the findings of evaluator Garland provide clear support for the ALJ's conclusion. Ms. Garland noted that "[a]bility to persist and concentrate was limited today in regards to concentration and recent memory, ***but the examiner is concerned that she did not put forth her best effort.***" [Tr. 207] (emphasis added). Further, Dr. Nevils opined only that plaintiff "*could have* at least moderate problems with memory and concentration." [Tr. 232] (emphasis added). However, the ALJ cited neither of these points.

An administrative decision should generally not be reversed and remanded where doing so would be merely "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted). At the same time, a reviewing court cannot find an error to be harmless solely because the claimant "appears to have had little chance of success on the merits anyway." *Id.* at 546 (citation omitted). Instead, the court must be able to discern at least *some* indirect support for the challenged rejection of a pertinent opinion, such as:

    1. The medical opinion was so patently deficient that no reasonable fact-finder could have credited it;

    2. The ALJ elsewhere adopted the opinion;

    3. An earlier decision by the ALJ adequately addressed the issue; or

    4. The ALJ's reasoning could be inferred from his overall discussion of the condition.

*Id.* at 547; *Hall v. Comm'r of Soc. Sec.*, No. 04-5572, 2005 WL 2139890, at *6-9 (6th Cir. Sept. 2, 2005).

The court finds none of these situations present in this case. Dr. Nevils's opinion may be equivocal and contradicted, but it is not "patently deficient." As for the second consideration, the ALJ did not elsewhere adopt Dr. Nevils's assessment, and in fact purportedly relied on Dr. Regan's more restrictive opinion. [Tr. 14]. While the (same) ALJ's decision in plaintiff's third application did allude to Ms. Garland's findings regarding malingering and credibility [Tr. 35], that is not enough to explain his later adoption and dismissal of Drs. Nevils and Regan. [Tr. 14, 362]. Lastly, for the reasons earlier discussed, support for the ALJ's conclusion cannot be inferred from his overall discussion of plaintiff's mental health.

Based on the error below, plaintiff seeks reversal and an immediate award of benefits - but this court cannot award benefits based on the present record. A reviewing court can reverse and immediately award SSI payments "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id*.

Ms. Garland's findings significantly undercut the assessments of Drs. Nevils and Regan. Physically, although FNP Williams's severe assessment is supported by some

objective evidence, the same can be said for the consulting evaluation by Dr. McConnell. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (ALJ's are allowed a "zone of choice" in evaluating competing strains of substantially supported evidence.). Further, as a nurse practitioner, Ms. Williams is not an "acceptable medical source" who can provide evidence to establish an impairment. *See* 20 C.F.R. § 416.913(a), (d). Her opinion is not entitled to controlling weight for this reason. *See* 20 C.F.R. § 416.913(d)(1) (The use of a nurse practitioner's opinion is within the Commissioner's discretion).

The administrative record, read as a whole, therefore does not adequately establish an entitlement to benefits. *Faucher*, 17 F.3d at 176. This case will instead be remanded to the Commissioner for further explanation of the issues raised herein. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge